Kenneth P. DAVIS, Petitioner-Appellant,

v.

PSYCHOLOGY EXAMINING BOARD, Respondent.

Court of Appeals

*No. 88–0193. Submitted on briefs August 2, 1988.—Decided September 22, 1988.*

(Also reported in 431 N.W.2d 730.)

For the petitioner-appellant the cause was submitted on the brief of *Bruce K. Kaufmann* and *Allen A. Arntsen* and *Jenswold, Studt, Hanson, Clark & Kaufmann,* of Madison.

For the respondent the cause was submitted on the brief of *Donald J. Hanaway,* attorney general, and *William H. Wilker,* assistant attorney general.

Before Gartzke, P.J., Dykman and Eich, JJ.

GARTZKE, P.J.  The issue is whether the decision of the Psychology Examining Board to deny Kenneth Davis's application for a psychology license is based on facts supported by substantial evidence in the record. That issue turns on whether the hearing examiner properly prevented Davis's expert from testifying that Davis had told the truth during a license revocation proceeding at which he denied having had sexual intimacies with clients. We hold that the examiner did not err, substantial evidence supports the facts on which the decision is based, and we affirm the trial court's order which in turn affirms the board's decision.

In 1978 Davis was licensed to engage in the private practice of school psychology in this state. Section 455.04(1) and (4), Stats., distinguish between licensing as a psychologist and a license to engage in the private practice of school psychologist. According

to Wis. Adm. Code sec. Psy 3.01(4), "Services offered by persons in the private practice of school psychology are offered for the primary dual purposes of improving the client's school adjustment and learning environment."

In 1981 the board revoked Davis's license. The board based its decision on its finding that in 1980 Davis had engaged in oral and sexual intercourse with one female client and sexual intercourse with another at his offices. That conduct was contrary to Wis. Adm. Code sec. Psy 3.02(15), which prohibits indulging in sexual intimacies with a client, and therefore violated a rule of professional conduct promulgated under ch. 455, Stats. Section 455.09(1)(g) provides that the board may deny an application for or revoke a license if the applicant or licensee has violated ch. 455 or any rule of professional conduct promulgated under that chapter. At the hearing Davis denied that any sexual intimacies had occurred. As additional grounds for revocation, the board found that Davis had twice misrepresented that he was licensed to practice psychology, contrary to sec. 455.02(1)(a).

When his school psychology license was revoked, Davis's application to practice psychology was pending before the board. In 1985, Davis requested that the board act upon that application. The board denied the application, partly because Davis failed to show that he had been rehabilitated. In June 1986 he renewed his application and furnished a letter from Dr. Edwin Morse, a clinical psychologist, to support his request. The board denied this application, since Dr. Morse's letter indicated that Davis continues to deny the sexual intimacy charges which were a basis for revocation of his license in 1981. The board stated that his continued denial indicated Davis's refusal to

accept responsibility for his misconduct, and that the board must conclude that no rehabilitation had occurred. Davis requested a formal hearing, which was held.

The hearing examiner's findings describe the 1981 findings and conclusions which were the basis for revocation of Davis's school psychology license. The examiner found that since 1986, Davis had seen Dr. Morse for counseling. In Dr. Morse's opinion, Davis did not display symptoms of, or fit a classification consistent with, psychologically deviant or sexually aberrant behavior; Davis did not display symptoms of personality disorder that result in denial of sexually deviant behavior; and Davis was capable of entering into the profession of psychology and practicing without danger to the public. Davis continued to deny that he had sexual intimacies with his clients in 1981, and the examiner found, "A person who has engaged in sexually aberrant behavior would have to admit that the behavior actually occurred before any significant rehabilitation of that person could occur."

The examiner concluded that Davis has committed serious violations of Wis. Adm. Code sec. Psy 3.02(15) and sec. 455.02(1)(a), Stats.; that Davis has not made a sufficient demonstration of rehabilitation to rebut the presumption of danger to the public raised by those violations; and that his application for a license should be denied.

The board adopted the examiner's recommendation. Davis sought judicial review under sec. 227.53(1), Stats. The circuit court concluded that the board's reasons for denying Davis's application were reasonable conclusions based on substantial evidence in the record. The court therefore affirmed the decision of the board.

Section 227.57, Stats., establishes the scope of judicial review of an administrative decision. A reviewing court may not substitute its judgment for that of the agency as to the weight of the evidence on any disputed finding of fact, but we must set aside the agency's action if it depends on a finding which is not supported by substantial evidence in the record. Sec. 227.57(6). When further review is sought in the court of appeals, we review the agency's findings, conclusions and order independently of and with no deference to the decision of the circuit court. *Doersching v. Funeral Directors,* 138 Wis. 2d 312, 322, 405 N.W.2d 781, 785 (Ct. App. 1987).

Davis contends that the only issue before the board was whether his licensure posed a danger to the public. He asserts that the revocation of his license created a presumption of unfitness which he rebutted by substantial evidence of his rehabilitation. That evidence is the opinion of Dr. Morse. Davis contends that the examiner should have allowed Dr. Morse to testify (and Davis offered to prove) that in Morse's opinion Davis is honest when he denies that sexual intimacies occurred. He asserts that had Dr. Morse been allowed so to testify, that testimony would have established his rehabilitation. Since that is Dr. Morse's opinion and the record contains no contrary evidence, Davis argues that the board's decision lacks a substantial basis in the record.

We agree that the purpose of licensure is to protect the public, and that the propriety of a particular licensing decision must be viewed in light of that goal. The supreme court has so held with respect to licensing of physicians, *Gilbert v. Medical Examining*

*Board,* 119 Wis. 2d 168, 188–89, 349 N.W.2d 68, 77 (1984), dentists, *Strigenz v. Department of Regulation,* 103 Wis. 2d 281, 287, 307 N.W.2d 664, 667–68 (1981) and optometrists, *Reidinger v. Optometry Examining Board,* 81 Wis. 2d 292, 298–99, 260 N.W.2d 270, 273 (1977).

The same considerations apply to licensing of psychologists. Public protection underlies the psychology licensure requirements in sec. 455.04(1), Stats., and the grounds in sec. 455.09 to deny an application for or to suspend, limit, revoke or impose conditions on a license to practice psychology.

Davis insists that the board must establish a nexus between his prior offenses and the public's need for protection, and that the board must therefore find that he is or is not rehabilitated. We need not go that far in the case before us. Section 455.09(1)(g), Stats., provides that the board may deny any application for a license if the applicant has violated ch. 455 or a rule of professional conduct promulgated under that chapter and does not contain the words "unless the applicant is rehabilitated."

The board relied, however, on Davis's failure to present sufficient evidence of rehabilitation. It expressly used that insufficiency as a ground to deny his application. The history of the case shows that this ground was perhaps central to the board's decision. For those reasons we review the board's factual basis for the ground. For the same reasons, we reject the attorney general's proposal that we affirm the board's action merely because sec. 455.09(1)(g), Stats., allowed the board to deny licensure when, as here, the applicant has violated ch. 455 or a rule of professional conduct promulgated under it.

Davis impliedly concedes that a psychologist's sexual intimacies with a client are aberrant and dangerous to the public. He does not seriously contest the finding that a person who engaged in sexually aberrant behavior would have to admit that the behavior occurred before significant rehabilitation could occur. Although he contends that no credible evidence supports that finding, the record contains nothing to the contrary, and his own expert described the proposition as "accurate." Since that finding is supported by substantial evidence, we must accept it. Sec. 227.57(6), Stats.

We reject the contention that the examiner abused his discretion by refusing to permit Dr. Morse to testify that Davis told the truth in 1981 when he denied his misconduct. The rule in criminal cases is that an expert will not be permitted to testify that in the expert's opinion a witness is telling the truth. "No witness, expert or otherwise, should be permitted to give an opinion that another mentally and physically competent witness is telling the truth." *State v. Haseltine,* 120 Wis. 2d 92, 96, 352 N.W.2d 673, 676 (Ct. App. 1984). *See also Hampton v. State,* 92 Wis. 2d 450, 458–59, 285 N.W.2d 868, 872 (1979) (trial court properly prevented psychologist from stating opinion as to reliability of witness's identification of defendant); *Steele v. State,* 97 Wis. 2d 72, 98, 294 N.W.2d 2, 14 (1980) (testimony by psychiatrist in guilt phase of criminal trial inadmissible to establish defendant's intent or state of mind); and *State v. Dalton,* 98 Wis. 2d 725, 730–31, 298 N.W.2d 398, 400 (Ct. App. 1980) (psychiatrist may not testify that defendant did not intend to kill victim). The examiner did not abuse his

discretion when he followed the same rule in the hearing on Davis's application.

Davis contends that Dr. Morse's opinion as to his honesty was offered only to support Dr. Morse's opinion that Davis had been rehabilitated, not to influence the factfinder. We disagree. That testimony was offered to persuade the board to ignore its 1981 findings that Davis had sexual intimacies with clients.

We do not hold that principles of res judicata require the present board to abide by its 1981 findings that Davis had engaged in sexual intimacies with his clients. Those principles do not apply to administrative agencies. *Fond du Lac v. Dept. of Natural Resources,* 45 Wis. 2d 620, 625, 173 N.W.2d 605, 608 (1970).

The board has the right, however, to refuse to substitute Dr. Morse's opinion for its 1981 findings that Davis had, contrary to his testimony, engaged in sexual intimacies with clients. No factfinder is bound by the opinion of an expert, even if the opinion is uncontroverted. *Krueger v. Tappan Co.,* 104 Wis. 2d 199, 203, 311 N.W.2d 219, 222 (1981). The 1981 board heard not only Davis's testimony but that of the clients who charged him with sexual intimacies. The board weighed their testimony against that of Davis. Dr. Morse did not. The present board is entitled to reject Dr. Morse's one-sided opinion.

Davis contends that he faces a dilemma of the cruelest sort. He asserts that he testified truthfully in 1981, but the board will not license him because he will not admit that he perjured himself at the earlier hearing. Yet he perjures himself if he now says that he previously lied.

This dilemma, if it exists, is as tragic as that of the innocent person convicted of a crime who cannot

truthfully show remorse at sentencing or before the parole board. But no court or board must rely on the testimony of a psychologist years later to decide whether the dilemma exists.

We agree with the circuit court that substantial evidence in this record supports the board's conclusions on which it based its decision. We therefore affirm the order affirming the board's decision.

*By the Court.*—Order affirmed.